UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLANDO GAOIRAN,<br><br>    Petitioner,<br>  vs.<br><br>S.W. ORNOSKI, Warden, et al.,<br><br>    Respondent. | No. C 05-4253 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Rolando Gaoiran, a California state prisoner proceeding pro se, filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges a decision by the Board of Prison Terms ("Board") that he is unsuitable for parole. The Court directed respondent to show cause why the cognizable claims should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes petitioner is not entitled to relief based on the claim presented and will DENY the petition.

## BACKGROUND

In 1986, petitioner pleaded guilty to second-degree murder, see Cal. Pen. Code § 187, and admitted to using a firearm in the commission of a felony, see id. §12022.5. (Ans. Ex. 3 (Report of Probation Officer 4/8/86) at 1). The Santa Clara Superior Court sentenced petitioner to fifteen years to life. (Id.) In December 2003, the Board found petitioner unsuitable for parole

because he would pose an unreasonable risk of danger to society or a threat to public safety if released. (Ans. Exh. 2 (Parole Hearing Transcript, Dec. 19, 2003) at 47.) The facts on which the Board relied are as follows. On December 24, 1985, petitioner attended a Christmas party with his family at a friend's house. Petitioner and his friend Joe Torres ("Torres") had an argument, during which Torres allegedly threatened petitioner's life. Petitioner walked to his vehicle, retrieved a pistol, and returned to the party. (Id. at 10, 33.) Petitioner "inserted the magazine, manipulated the slide, took a combat stance, aimed at [Torres]" and shot him twice. (Id. at 34). When Torres fell to the floor, petitioner approached him and fired a third shot into Torres's head. (Id. at 10, 12.)

Petitioner gave a different version of events. Petitioner asserts that Torres had threatened petitioner's life "for some time before the shooting," and that petitioner's fear of Torres had been growing. According to petitioner, Torres came to petitioner's house two or three months before the shooting and threatened to kill him. On the night of the killing, according to petitioner's version of events, Torres allegedly "grabbed [petitioner] aggressively, which caused [petitioner] to defend himself by first breaking free and then shooting Torres." (Id. at 10–11.)

At the parole hearing, the Board reviewed petitioner's record, including his psychological report, the opinions of law enforcement, and his parole plans. The evaluating psychologist found petitioner had a "tendency to minimize his own culpability"; for example, when the psychologist asked petitioner about the offense, petitioner stated, "[I]t happened." The report also cited petitioner's problematic substance abuse, and his "history of violence during the incident offense," as posing "present risk factors for future violence." (Id. at 25, 26.) The psychologist further found petitioner was "at low risk for violence while incarcerated." (Id. at 25.) The Board also considered evidence that the San Jose Police Department and the Santa Clara District Attorney opposed petitioner's parole. (Id. at 29, 39).

In its review of petitioner's parole plans and prison behavior, the Board, while acknowledging petitioner had made positive progress while in prison, had committed very few disciplinary infractions, and had acquired several marketable skills, (id. at 20–21), found petitioner's parole plans were inadequate because they did not include an actual job offer, but

only vague offers of possible future employment.  (Id. at 27–28, 51–52).  After a full hearing, during which all of the above evidence was considered, the Board found petitioner unsuitable for parole.

In response to the Board's decision, petitioner filed state habeas petitions, all later denied, in the California Superior Court, Court of Appeal, and Supreme Court.  (Ans Exs. 6–10.)  In 2005, petitioner filed the instant federal petition, alleging the Board's finding of unsuitability violated his constitutional right to due process and was not supported by any evidence.  (See Order to Show Cause ("OSC"), filed March 30, 2006, at 2.)

**DISCUSSION**

**A.     Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000).  A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).  Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  Penry v. Johnson, 532 U.S. 782, 796 (2001).

The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court

1  opinion, which, in this case, is the California Court of Appeal's opinion affirming the trial
2  court's judgment. (Ans Ex. E); See Nunnemaker, 501 U.S. at 801-06; Shackleford v. Hubbard,
3  234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

**B.     Petitioner's Claim**

    **1.     Due Process**

Petitioner alleges that the Board's decision was based upon insufficient evidence, depriving him of federal due process rights under the Fifth and Fourteenth Amendments. The Board identified several reasons for its decision, including the circumstances of the commitment offense, petitioner's lack of insight into the commitment offense, the opposition of law enforcement to the granting of parole, and petitioner's lack of adequate parole plans. (Ans. Ex. 2 at 47, 49, 51–52.)

The Board's denial of parole complies with due process provided that there is "some evidence" to support its decision. As the Supreme Court has explained, a parole board's decision deprives a prisoner of due process if the Board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." See Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454–55 (1985)); see also McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) (same). Additionally, the evidence underlying the Board's decision must have "some indicia of reliability." See McQuillion, 306 F.3d at 904. Accordingly, if the Board's determination with respect to parole suitability is to satisfy due process, such determination must be supported by some evidence having some indicia of reliability. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

In assessing whether there is "some evidence" to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. Pursuant to such regulations, "[t]he panel shall first determine whether the life prisoner is suitable for release on parole; [r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs.

§ 2402(a). Additionally, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Id., § 2402(c)–(d).[1] One circumstance tending to show an inmate's unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel manner." Id., § 2402(c). Two factors that the parole authority may consider in determining whether such a circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id., § 2402(c)(1)(D) & (E). In addition to these factors, the Board is to consider "all relevant, reliable information available." Id., § 2402(b).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). Consequently, the constitutional "some evidence" requirement is that there exists some evidence that the prisoner constitutes such a danger, not simply that there exists some evidence of one or more of the factors listed in the regulations as considerations appropriate to the parole determination. Id. at 1205–06.

Here, the Court cannot say the state court was unreasonable in concluding there is some evidence to support the Board's decision that petitioner would be a danger to society if released. As to the circumstances of the commitment offense, some evidence exists to support the Board's determination that the offense "was carried out in manner which demonstrates an exceptionally insensitive disregard for human suffering." (Ans. Ex. 2 at 47.) In particular, the record shows that petitioner, after an argument during a family Christmas party, walked to his car, retrieved a

---

[1] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

1 gun, returned to the party, loaded the gun, fired directly at the victim and, when the victim was
2 down, moved in and shot him fatally in the head.  Based on this record of unpredicted and
3 excessive violence, the Court finds some evidence exists to support the Board's finding that the
4 circumstances of the commitment offense indicate petitioner remained unsuitable for parole in
5 2003.

6       Petitioner contends the Board's continued reliance solely on the unchanging factor of the
7 circumstances of the commitment offense can result in a violation of due process.  (Pet. at 11.)
8 While petitioner's general proposition is supported by case law, see Biggs v. Terhune, 334 F.3d
9 910, 916 (9th Cir. 2003), petitioner has not shown the Board violated his right to due process, as
10 the Board, in petitioner's case, did not rely solely on the circumstances of the commitment
11 offense; rather, the Board relied on other relevant considerations as well.[2]

12       In particular, the psychologist's report, in addition to the circumstances of the offense,
13 supports the Board's finding that petitioner lacked sufficient insight into the commitment
14 offense, and therefore would present an unreasonable risk of danger.  That report indicates
15 petitioner tends to minimize his culpability, and that the commitment offense and petitioner's
16 substance abuse present risk factors for future violence.  Additionally, the letter received from
17 the San Jose Police Department and the statements made at the hearing by a Deputy District
18 Attorney support the Board's finding that law enforcement was opposed to the granting of parole
19 because of the seriousness of the commitment offense and petitioner's lack of insight into the
20 crime.  In sum, based on the above-described record, the Court finds some evidence exists to
21 support the Board's decision.

22       Lastly, petitioner claims that the Board "was operating under a 'no-parole' policy" that
23 "ignores the plain language of the statutes under which i[t] is obligated to function and violates
24 [d]ue [p]rocess."  (Pet. at 3.)  This claim is without merit.  Petitioner has provided no evidence

---

[2] Petitioner also contends that the Board's failure to use the sentencing matrix violates due process.  (Pet. at 12.)  Petitioner's claim is without merit.  First, petitioner has not shown the Board's alleged failure to use the sentencing matrix is a cognizable federal constitutional claim.  Second, the Board is under no duty to use the matrix after it has determined a prisoner is unsuitable for parole.  In re Dannenberg, 34 Cal. 4th 1069, 1071 (Cal. 2005).

6

1  that the Board was operating under such a policy.  Although petitioner asserts that an
2  "Attachment A" to his petition contains "over 200 declarations from inmates serving term to life
3  sentences," which, according to petitioner, support "his contention that the Board invariably and
4  almost universally characterizes murders as being of the particularly cruel or egregious sort"
5  (Pet. at 2), petitioner did not file such attachment with the Court.

6      In any event, even statistical data as to the rate of denial in other prisoners' cases will not
7  suffice to establish that the Board automatically denies parole, or that the Board otherwise
8  improperly made its determination in petitioner's case, as parole may have been properly denied
9  after the Board's individualized assessment of each of those cases.  See Mosby v. Solis, 243 Fed.
10 Appx. 246, 248 (9th Cir. 2007) (holding statistical denial rate insufficient to establish blanket
11 policy to deny parole); see also Cosio v. Kane, No. C 05-1966 CRB (PR), 2007 WL 518599, at
12 *6 (N.D. Cal. Feb. 12, 2007) (holding reliance on statistical data of high percentage of parole
13 denials provides no proof of Board's systematic bias against parole where prisoner received
14 individualized assessment of parole suitability); Morris, 2008 WL 4825927 at *4–5 (holding
15 petitioner failed to demonstrate predetermined outcome of parole hearing where Board provided
16 "detailed rationale" for decision).  Here, there is nothing to suggest, let alone support a finding,
17 that the Board operated under a "no-parole policy" in assessing petitioner's suitability for parole.
18 Rather, the Board gave a detailed explanation, based on the specific circumstances of petitioner's
19 case, for its finding that petitioner was unsuitable for parole.  Based on this record, the Board's
20 decision comports with due process.

## CONCLUSION

22  Because the record contains, at a minimum, some evidence to support the Board's finding
23 that petitioner would present an unreasonable risk of danger to society if released, the Court
24 finds the state court's determination was neither contrary to nor an unreasonable application of
25 clearly established Supreme Court precedent, nor can the Court say that it was based on an
26 unreasonable determination of the facts.

27 //
28 //

1  Accordingly, the petition for writ of habeas corpus is hereby DENIED.

2  The Clerk shall enter judgment and close the file.

3  **IT IS SO ORDERED.**

4  DATED: December 18, 2008

_____
MAXINE M. CHESNEY
United States District Judge